(68 Misc. Rep. 405.)

### GUILBERT et al. v. GUILBERT et al.

(Supreme Court, Special Term, New York County.  August 4, 1910.)

1. CONVERSION (§ 16*)—DIRECTIONS IN WILL—IMPLIED CONVERSION.

A will giving the residuary real and personal estate of testator to executors, in trust to set apart one-half thereof on specified trusts and one-half thereof on other trusts, and conferring on the executors authority to sell any real estate at any time and on such terms as to them may seem fit and to join with any party in the partition of any real estate, did not impliedly convert the real estate into personalty, in the absence of a showing that it was impossible to apportion different parts of the real estate to the different trusts so as to produce the required fractional division, or that the deficiencies of one or more of the shares could not be made up from the personalty, or that one or more of the shares might not be made up entirely of personalty and the real estate apportioned to the remaining share or shares.

[Ed. Note.—For other cases, see Conversion, Cent. Dig. §§ 38–43;  Dec. Dig. § 16.*]

2. WILLS (§ 681*)—TESTAMENTARY TRUSTS—TITLE OF EXECUTORS.

Where real and personal estate is given to executors, to have and to hold the same on trusts declared in the will, the executors take only such an estate as is necessary to the execution of the trusts.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1612, 1613;  Dec. Dig. § 681.*]

3. CONVERSION (§ 16*)—CONVERSION OF REALTY INTO PERSONALTY—WILLS.

A will giving the residuary real and personal estate to executors, in trust to set apart one-half thereof to pay the income to a person for life, with gift over on his death, and to set apart one-fourth to pay the income to another person for life, and at his death to his son during the lifetime of his mother, and on her death to give such estate to the son or his lineal descendants per stirpes, and to set apart one-fourth and pay the income to another for life, and at his death to give the one-fourth to his heirs per stirpes, and empowering the executors in their discretion to sell real estate, etc., did not show an intention of testator to convert the realty into personalty.

[Ed. Note.—For other cases, see Conversion, Cent. Dig. §§ 38–43;  Dec. Dig. § 16.*]

4. WILLS (§ 622*)—CONSTRUCTION—ESTATES DEVISED.

Testator gave his residuary real and personal estate to his executors, in trust to set apart one-half on designated trusts, and one-fourth on other trusts, and one-fourth in trust to pay the income to testator's brother for life, and at his death to pay the income to the brother's son during the lifetime of his mother, and at her death to deliver the estate to the son or to his lineal descendants per stirpes, and authorized the executors to sell any real estate.  *Held*, that the son of testator's brother took an estate in remainder in an undivided one-fourth of the residuary real estate, to vest in possession on the death of his father and mother, subject to the power of sale of the executors in the meantime, and to their power to apportion the shares.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1440–1444;  Dec. Dig. § 622.*]

5. PARTITION (§ 46*)—PARTIES—NECESSARY PARTIES.

Under Code Civ. Proc. § 1538, providing that every person entitled to the remainder of an undivided share after the determination of a particular estate must be made a party to an action for partition, a beneficiary under a will taking an estate in remainder in an undivided one-fourth of the residuary real estate, to vest in possession on the death of

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

his father and mother, subject to the power of sale of executors in the meantime, is a necessary party in an action by the executors for partition.

[Ed. Note.—For other cases, see Partition, Cent. Dig. § 114; Dec. Dig. § 46.*]

Action by Edmund Guilbert and others, as executors and trustees of the will of Theodora M. Storm, deceased, against Arthur W. Guilbert and others, for partition of real estate. On motion to compel purchaser to take title. Denied.

Mackenzie & Burr, for the motion.
Abraham I. Smollens, opposed.

GIEGERICH, J. The premises in suit were sold pursuant to an interlocutory judgment of partition and sale, and the purchaser has refused to take title upon the ground, among others, that the beneficiaries and remaindermen under the will of Theodora M. Storm and the wives of such remaindermen and all persons having liens upon the interests of such remaindermen were not made parties to the action. As I think his refusal is justified on that ground, it will not be necessary to notice his other objections.

Theodora M. Storm died on the 16th day of February, 1901, seised in fee simple of several parcels of real property situate in the states of New York and New Jersey, including an undivided $^{159}/_{160}$ part of the premises in question. She left a will by which, after giving several legacies, she provided as follows:

"Ninth. All the rest, residue and remainder of my property, wherever the same may be situated, as well that which I now own as that which I may hereafter acquire, and of whatever kind the same may be, whether real, personal or mixed, and including that which I have hereinbefore ineffectually disposed of, I give, devise and bequeath to my executors hereinafter named or their successors, or survivors of such of them as may qualify, to have and to hold the same upon the following uses and trusts, that is to say: To set apart one-half of the residuary estate as nearly as the same, in the judgment of my executors, can be set apart or apportioned, and to collect and receive the income thereof, and after paying the expenses of such collection to pay over the net income to my brother-in-law, George N. Messiter, or to devote the same to or for his benefit, care, maintenance and support as long as he shall live, in such manner as shall seem best and meet in the judgment of my executors. At and upon the death of my said brother-in-law, George N. Messiter, I direct my said executors to pay from said one-half part so set apart for his use."

Here follow three pecuniary legacies of $5,000 each, and the testator then continues:

"Any balance that there may be after the death of my said brother-in-law, George N. Messiter, and after paying the said three sums of five thousand dollars hereinbefore immediately provided for, I direct my executors to divide and pay to my two brothers, Walton Storm and Arthur W. Guilbert, in equal portions, and in case of the death of either or both of them at the time of the death of the said George N. Messiter, the portion of the one so dying is to be divided and paid over to his heirs and next of kin living at the time of the death of said George N. Messiter, per stirpes, however, and not per capita."

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

The testatrix thus disposed of the beneficial interest in one-half of her residuary estate. She next disposed of the beneficial interest in a further one-fourth part thereof by the following directions to her executors and trustees:

"To set apart one-quarter of the said residuary estate as nearly as the same in the judgment of my executors can be set apart or apportioned, and to collect and receive the income thereof, to pay the net income to my brother, Walton Storm, as long as he shall live; at and upon his death to pay the said net income of the said one-quarter to Walton Storm, Jr., the son of Walton Storm, during the lifetime of his mother (now Leila Leeds); at and upon the death of the said Leila Leeds I do give, devise and bequeath the said one-quarter of my estate so set apart as aforesaid to the said Walton Storm, Jr., the son of my said brother, if he be living at the time of the death of his mother, the said Leila Leeds. If he be not living at the time of the death of the said Leila Leeds, I do give, devise and bequeath the said one-quarter of my estate so set apart as aforesaid to any lineal descendants of said Walton Storm, Jr., living at that time, that is, at the time of the death of his mother, said Leila Leeds, per stirpes, however, and not per capita; if the said Walton Storm, Jr., is not living at the time of the death of his mother, the said Leila Leeds, and if there are not lineal descendants of him, the said Walton Storm, Jr., then surviving, I do give, devise and bequeath the said one-quarter of my residuary estate, so set apart as aforesaid, to my heirs and next of kin then living, that is to say, at the time of the death of the said Leila Leeds (who is no relation of mine) in accordance with the laws of the state of New York provided in cases of intestacy, per stirpes, however, and not per capita."

The foregoing provisions of the will still left the beneficial interest in one-fourth of the residuary estate undisposed of, and the testatrix proceeded to dispose of it by the following directions to her executors and trustees:

"To set apart one other quarter of the said residuary estate as nearly as the same, in the judgment of my executors, can be set apart or apportioned, and to collect and receive the income thereof, and after paying the expenses thereof to pay the net income to my brother, Arthur W. Guilbert, as long as he shall live, and at and upon his death to pay the said one-quarter so set apart as aforesaid to his heirs and next of kin living at the time of his decease, per stirpes, however, and not per capita."

The tenth paragraph of the will is as follows:

"Tenth. I hereby nominate and appoint the Reverend Dr. Edmund Guilbert, of Southport, Connecticut, Orlando H. Harriman, of New York, and J. Van Vechten Olcott, of New York, the executors of this, my last will and testament, and I do hereby give to my said executors full power and authority to sell any and all of my real estate at such time, and upon such terms as to them may seem fit and expedient, and, for that purpose, to make, execute and deliver good and sufficient deeds of conveyance of such real estate, or any portion thereof. And I further authorize and empower my said executors or survivor or survivors, successor or successors of them, to join with any party or parties in the partition of any real estate owned by me with any other person or persons. I further authorize and empower my said executors, or such of them as may qualify, or their survivor or survivors, successor or successors, to make, execute and deliver any mortgage upon my said real estate, in case any existing mortgage is called in, or payment thereof demanded, or to make such mortgage or mortgages for the purpose of improving any property of which I may die seized. I also authorize and empower my said executors, or such of them as may qualify, or the survivor or survivors of them, or their successor or successors, to make, execute and deliver any leases of any of my real estate, wherever the same may be situated, for such time, and upon such terms as to them may seem proper."

Walton Storm, Jr., was not made a party to this action. The purchaser contends that he was a necessary party, and if his contention is correct he was justified in rejecting the title. The plaintiffs contend that the provisions of the will worked an equitable conversion, immediately upon the death of the testatrix, of all her real property, and that, consequently, Walton Storm, Jr., has not, and never had, any interest in the land, but only in the proceeds of its sale.

I think this contention is unsound. There is concededly no express direction to the executors to sell the lands at any time. They are authorized, but they are not directed, to make such sale or sales. Nor is it apparent that either the immediate sale of any of the property or the ultimate sale of all of it was necessary to the carrying out of the intent of the testatrix and the consummation of the general scheme and purpose expressed in her will. It is doubtless true that the testatrix has shown with sufficient clearness that, upon the death of her brother-in-law, she desired that portion of the residuary estate which had been set apart for his benefit to be turned into money. It may even be true that by the language employed in the gift to Arthur W. Guilbert for life and to his heirs and next of kin at his death she has sufficiently indicated a like intent, to become effective upon the death of Arthur W. Guilbert (Delafield v. Barlow, 107 N. Y. 535, 14 N. E. 498), although the use of the word "heirs" might render such a construction doubtful.

But, if the doctrine of an implied conversion upon the death of the beneficiaries for life be admitted with regard to the three-quarters of the residuary estate just referred to, that, I think, is as far as it can go. It nowhere appears that a conversion of any or all of the real property was necessary at the outset of the administration of the estate for the purpose of establishing the separate trusts in the residuary estate. The residue of the estate, both real and personal, was to be divided into three separate portions, one portion being a half of the whole and the other two portions being each one-quarter of the whole; but in each case the apportionment is to be made "as nearly the same, in the judgment of my executors, can be set apart or apportioned." So far as appears, it may have been possible to apportion different parts of the real property to the different trusts, so as to produce the required fractional division as nearly as the language of the will required, or the deficiencies of one or more of the shares might have been made up from the personalty of the estate, or, for all that appears, one or more of the shares might have been made up entirely of personal property and the real property apportioned to the remaining share or shares. Thompson v. Hart, 58 App. Div. 439, 448, 69 N. Y. Supp. 223, affirmed 169 N. Y. 571, 61 N. E. 1135. I cannot say, then, that the conversion of the real property was necessary to the establishment of the trusts. Phœnix v. Trustees of Columbia College, 87 App. Div. 438, 84 N. Y. Supp. 897, affirmed on opinion below in 179 N. Y. 592, 72 N. E. 1149; Matter of Tatum, 169 N. Y. 514, 62 N. E. 580; Hayden v. Sugden, 48 Misc. Rep. 108, 96 N. Y. Supp. 681, and cases there cited; Westervelt v. Mahony, 56 Misc. Rep. 409, 106 N. Y. Supp. 637.

Does the will, nevertheless, fairly show that such a conversion was intended? The whole residuary estate, both real and personal, is given and devised to the executors, to have and to hold the same upon the trusts declared in the will. The executors, therefore, took such an estate as was necessary to the execution of the trusts, and no more. Matter of Tienken, 131 N. Y. 391, 401, 30 N. E. 109. By the tenth paragraph of the will the executors are empowered to sell any or all of the real property; but by the same paragraph they are expressly authorized to make, execute, and deliver mortgages to replace outstanding mortgages which may be called in, and also to make new mortgages for the purpose of improving any of such property. They are further given the power to make leases for such time as they may think proper. It seems to me that all these provisions quite conclusively negative the suggestion that an immediate conversion of the real property was intended.

I now come to the provisions of that part of the ninth paragraph of the will by which the gift to Walton Storm, Jr., is made. After providing for the payment of the income of one-fourth of the residuary estate to Walton Storm for life and thereafter to Walton Storm, Jr., during the lifetime of his mother, the will provides:

"At and upon the death of the said Leila Leeds, I do give, devise and bequeath the said one-fourth part of my estate so set apart, as aforesaid, to the said Walton Storm, Jr.   *   *   *"

It will be observed that, unlike the language in the cases of the other two gifts, that here employed is appropriate to the disposition of real as well as personal property. I reach the conclusion, therefore, that there is no sufficient ground for holding either that there was an implied direction to convert all the real property of the estate or that there was such a direction with regard to that portion thereof left to Walton Storm, Jr., after the death of his father and mother.

It is further urged, however, that Walton Storm, Jr., takes no interest in the real property as a whole nor in any particular part thereof until it shall have been first allotted to him by the executors under the direction to them to set apart a one-fourth share of the residuary estate in a trust to the corpus of which he is to become entitled upon the death of his father and mother, and that, as no such allotment has been made, he has no interest in the lands sought to be partitioned in this action. Such a construction of the will would leave the rights of Walton Storm, Jr., wholly dependent upon the action of the executors, and I do not think it is sound or sustained by the authorities. Thompson v. Hart, supra; Campbell v. Stokes, 142 N. Y. 23, 36 N. E. 811. I think, on the contrary, that Walton Storm, Jr., took an estate in remainder in an undivided one-fourth of the residuary real property, to vest in possession upon the death of his father and mother, subject, however, to the power of sale of the executors in the meantime, and to their power to apportion and set apart the different shares. The estate of the executors, as trustees, was evidently intended to be limited to the period during which they were to receive and pay over the income, and at the death of Leila Leeds the trust estate was to ter-

minate, and the estate in remainder was to vest in possession in Walton Storm, Jr.

It is unnecessary to determine whether his interest was vested or contingent because, in either event, he was a necessary party to the action. Code, § 1538; Campbell v. Stokes, supra. The power given to the executors to join with any party or parties in the partition of any of the real estate owned by the testatrix with any other person or persons may have been sufficient to enable them to effect actual partition by mutual consent of any lands owned by the testatrix in common with others, but it certainly cannot be held to justify the maintenance of an action in which those who would otherwise have been necessary parties are omitted.

The motion to compel the purchaser to take title must therefore be denied, with $10 costs. Settle order on notice.